AO 106 (Rev. 04/10)  Application for a Search Warrant



FILED

MAR 1 4 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

# UNITED STATES DISTRICT COURT

### for the

### Southern District of California

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | )    Case No.    **18MJ1206** |
| (2) One Azumi GSM850, Model L2Z Cellular Phone, IMEI: 355985073457298 | ) |
| | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2 (incorporated herein)

located in the    Southern    District of    California   , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-2 (incorporated herein)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Secs. 952, 960, and 963 | Importation of Cocaine and Methamphetamine; Conspiracy to Import Cocaine and Methamphetamine |

The application is based on these facts:

See attached Affidavit (incorporated herein)

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Regino Enriquez, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   3/14/18

City and state:  San Diego, California

_____
*Judge's signature*

Hon. Bernard G. Skomal, U.S. Magistrate Judge
*Printed name and title*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>(1) One Samsung Model SM-J320AZ<br>Cellular Phone, IMEI: 3566519079430749;<br>and<br><br>(2) One Azumi GSM850, Model L2Z Cellular<br>Phone, IMEI: 355985073457298. | **AFFIDAVIT OF SPECIAL AGENT REGINO ENRIQUEZ IN SUPPORT OF SEARCH WARRANT** |

I, Special Agent Regino Enriquez, having been duly sworn, declare and state as follows:

## I

## INTRODUCTION

1.     I make this affidavit in support of an application for a warrant to search (1) a Samsung model SM-J320AZ cellular phone, IMEI: 3566519079430749 ("Target Device Number 1" or "TD1"), and (2) a Azumi GSM850, model L2Z cellular phone, IMEI: 355985073457298 ("Target Device Number 2" or "TD2") (collectively, the "Target Devices"), and seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, and 963 Unlawful Importation of a Controlled Substance and Conspiracy to Unlawfully Import a Controlled Substance (the "Target Offenses").

2.     The Target Devices were seized from Defendant Eduardo Lopez-Diaz ("Defendant") at the time of his arrest for Importation of Methamphetamine and Cocaine on December 4, 2017 at the Otay Mesa, California Port of Entry.  The Target Devices are currently in the possession of Homeland Security Investigations ("HSI") as evidence and being held at 2255 Neils Bohr Court, San Diego, California 92154.

3.     This search of the Target Devices supports an investigation and prosecution of Defendant for the Target Offenses.  Based on the information below, there is probable cause to believe that a search of the Target Devices, as described in Attachments A-1 and A-2, will produce evidence of the Target Offenses, as described in Attachments B-1 and B-2.

4.     The following is based upon my experience and training, investigation, and consultation with other law enforcement agents and officers experienced in narcotics violations, including the Target Offenses.  The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case.  Because I make this affidavit for the limited purpose of obtaining a search warrant for the Target Devices, it does not contain all of the information known by me or other federal agents regarding this investigation, but only sets forth those facts believed to be necessary to establish probable cause.  Dates and times are approximate, and refer to Pacific Standard Time (PST) unless otherwise specified.

## II

## AFFIANT'S EXPERIENCE AND TRAINING

5.     I am a Special Agent with Homeland Security Investigations and assigned to a Contraband Smuggling Investigations Group in San Diego, California.  I have over eleven years of experience as a Special Agent.  I am a graduate of the Criminal Investigator Training Program and the Immigration and Customs Enforcement Special Agent Training program at the Federal Law Enforcement Training Center in Glynco, Georgia.  I have received basic training in conducting narcotics smuggling investigations and the enforcement of numerous Immigration and Customs laws within the United States.  My

training has also included the use of cellular and digital telephones and other electronic devices used by narcotics smugglers in the normal course of their illicit activities.

6.      I am a federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure.  I am authorized under Rule 41(a) to make applications for search and seizure warrants and to serve arrest warrants.  I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

7.      As a Special Agent, I have been involved in numerous narcotics trafficking investigations involving the importation, distribution, and sale of large quantities of controlled substances.  I have participated in many aspects of criminal investigations including the issuance of subpoenas, reviewing evidence, conducting physical and electronic surveillance, working with informants, and the execution of search and arrest warrants.  In the course of my duties, I have worked as the case agent directing specific drug-related investigations, including conducting surveillance, and observing and recording movements of individuals involved in drug trafficking.  I have initiated and executed numerous arrests for drug-related offenses, including possession with the intent to distribute and the importation of controlled substances.  I have also interviewed defendants, witnesses, and informants regarding their involvement in trafficking controlled substances.

8.      Through my observations and these interviews, I have gained a working knowledge and insight into the normal operational habits of narcotics smugglers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico at the San Diego international ports of entry.

9.      Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distributional quantities of

hard narcotics, such as cocaine, heroin, and methamphetamine. Typically, load drivers smuggling narcotics across the border from Mexico into the United States are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substances. Narcotics smugglers and their organizations use cellular/mobile telephones, in part, because these individuals believe law enforcement is unable to track the phone numbers of calls placed to and from cellular/mobile telephones.

10.     Based upon my training and experience as a Special Agent, my participation in the investigation of narcotic organizations, and consultations with law enforcement officers experienced with narcotic trafficking investigations, and all the facts and opinions set forth in this Affidavit, I submit the following:

a.     Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, email, Internet, social networking websites, and voice messages.

b.     Drug smugglers believe that cellular telephones provide greater insulation and protection against court-ordered wiretaps, and they believe in the inability of law enforcement personnel to simultaneously track the originating and destination telephone numbers of calls placed to and from their cellular telephone.

c.     Drug smugglers will use cellular telephones because they are able to monitor the progress of their illegal cargo while the conveyance is in transit.

d.     Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations to facilitate the further distribution of their illegal cargo within the United States.

e.     Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

f.     Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity, including the presence and location of marked

4

1    and unmarked units, as well as the operational status of Border Patrol checkpoints or Ports
2    of Entry within the United States.

3              g.      Conspiracies involving narcotics smuggling often generate many types
4    of evidence including, but not limited to, cellular phone-related evidence such as voicemail
5    messages referring to the arrangements of travel and payment, names, photographs, text
6    messages, and phone numbers of co-conspirators.

7         11.    Subscriber Identity Module (SIM) Cards, also known as subscriber identity
8    modules, are smart cards that store data for cellular telephone subscribers.  Such data
9    includes user identity, location and phone number, network authorization data, personal
10   security keys, contact lists and stored text messages. Much of the evidence generated by a
11   smuggler's use of a cellular telephone would likely be stored on any SIM Card that has
12   been utilized in connection with that telephone.

13        12.    Based upon my training and experience as a Special Agent, and consultations
14   with law enforcement officers experienced in narcotics smuggling investigations, and all
15   the facts and opinions set forth in this affidavit, I have learned that cellular/mobile
16   telephones often contain electronic records, phone logs and contacts, voice and text
17   communications, and data such as emails, text messages, chats and chat logs from various
18   third-party applications, photographs, audio files, videos, and location data. This
19   information can be stored within disks, memory cards, deleted data, remnant data, slack
20   space, and temporary or permanent files contained on or in the cellular/mobile telephone.
21   Specifically, based upon my training and education, I have learned that searches of
22   cellular/mobile telephones associated with narcotics smuggling investigations yield
23   evidence:

24        a.     tending to identify attempts to import cocaine, methamphetamine, or other
25                federally controlled substances from Mexico into the United States;

26        b.     tending to identify accounts, facilities, storage devices, and/or services—such
27                as email addresses, IP addresses, and phone numbers—used to facilitate the
28

5

importation of cocaine, methamphetamine, or other federally controlled substances from Mexico into the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in the importation of cocaine, methamphetamine, or other federally controlled substances from Mexico into the United States;

d.  tending to identify travel to or presence at locations involved in the importation of cocaine, methamphetamine, or other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, cellular/mobile telephone(s); and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## III

## STATEMENT OF PROBABLE CAUSE

11.  On December 4, 2017, at approximately 5:38 a.m., Defendant applied for entry to the United States at the Otay Mesa Port of Entry. Defendant was the driver, sole occupant, and registered owner of a 2010 Kia Optima bearing California license plate 8BEG780 (the "Vehicle").

12.  Customs and Border Protection Officer ("Officer") Aguiar was working the primary inspection booth during this time. Defendant presented a Permanent Resident card to Officer Aguiar. Upon querying Defendant's information, Officer Saeed received a computer-generated alert and referred Defendant to secondary inspection.

13.  In the secondary inspection area, Defendant's vehicle was scanned using a Z-Portal machine. Officer Gutierrez reviewed the image from the Z-portal machine and

noticed anomalies in the Vehicle's rocker panels. He informed other officers so they could conduct a physical search of the Vehicle.

14.     Officer Munoz then conducted a physical inspection of the Vehicle and discovered non-factory compartments in the rocker panels on each side of the Vehicle. The compartments contained a total of twenty packages wrapped in plastic. One package contained a substance that field-tested positive for the properties of cocaine and weighed a total of 0.32 kilograms, and nineteen of the packages contained a substance that field-tested positive for the properties of methamphetamine and weighed a total of 9.32 kilograms.

15.     The Target Devices were discovered and seized by officers at the time of Defendant's arrest. After Defendant's arrest, HSI assumed custody of the Target Devices.

16.     After Defendant's arrest, I reviewed the border crossing history for Defendant and the Vehicle. I found that Defendant began crossing the border regularly in November 2017 and crossed 11 times in the month leading up to his arrest, including 5 crossings in the Vehicle. In contrast, Defendant crossed the border only twice between October 2016 and October 2017. Based on my training and experience, individuals involved in narcotics smuggling often "burn" a vehicle's plates before using it to cross a load of drugs. Burning plates involves making regular trips in a vehicle to establish a regular crossing history. Based on my training and experience, the sudden change in Defendant's crossing pattern may have been attempting to "burn" the Vehicle's plates prior to using it to cross a load of drugs.

17.     Upon investigating the basis of the computer-generated alert that sent Defendant to secondary inspection, I learned that an officer had previously discovered at least one of the non-factory compartments in Defendant's Vehicle. Specifically, the alert placed on Defendant's Vehicle states that the Vehicle was inspected at the San Ysidro Port of Entry on November 20, 2017 and an Officer discovered an empty non-factory compartment in one of the Vehicle's rocker panels. I also reviewed Defendant's crossing history and confirmed that he crossed the Vehicle into the United States through the San Ysidro Port of Entry on November 20, 2017.

18.     Based on my experience investigating narcotics smugglers, Defendant may have used the Target Devices to coordinate with his co-conspirators regarding the importation and delivery of the methamphetamine and cocaine, and to otherwise further this conspiracy both inside and outside the United States.

19.     Based on my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I further believe that information relevant to the narcotics smuggling activities and her co-conspirators, such as recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, email messages, messages and posts from social networking sites, pictures, and other digital information may be stored in the memory of the Target Devices and may identify other persons involved in narcotics trafficking activities.

20.     Drug trafficking conspiracies require intricate planning and coordination. This often occurs days, weeks, or even months prior to the actual importation of the drugs into the United States.  Co-conspirators communicate with one another in efforts to ensure success in getting their valuable cargo to its destination within the United States.  In addition, Defendant's statements and TECS records show that Defendant began crossing the Vehicle into the United States in early November 2017.  Given this, I request permission to search the Target Devices for items listed in Attachment B-1 and B-2 beginning on September 15, 2017, up to and including December 4, 2017.

## III

## METHODOLOGY

21.     It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device.  Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and

can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22.    Following the issuance of this warrant, I will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the Target Devices and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

23.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## IV

## CONCLUSION

24.    Based on all of the facts and circumstances described above, my training and experience, and consultations with other law enforcement officers, there is probable cause

9

to conclude that Defendant utilized the Target Devices to facilitate the importation of methamphetamine cocaine in violation of Title 21, United States Code, Sections 952, 960, and 963.

25.     Because the Target Devices were promptly seized during the investigation of Defendant's smuggling activities and have been securely stored, there is probable cause to believe that evidence of illegal activities committed by Defendant continues to exist on the Target Devices.  As stated above, I believe that the date range for this search is from September 15, 2017 through December 4, 2017.

26.     Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I believe that the items to be seized set forth in Attachments B-1 and B-2 (incorporated herein) are likely to be found in the property to be searched described in Attachments A-1 and A-2 (incorporated herein). Therefore, I respectfully request that the Court issue a warrant authorizing me, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachments A-1 and A-2, and seize the items listed in Attachments B-1 and B-2.

I declare under penalty of perjury that the foregoing is true and correct.

Regino Enriquez
Special Agent
Homeland Security Investigations

Sworn to and subscribed before me this _____ *14* _____ day of March, 2018.

HONORABLE BERNARD G. SKOMAL
UNITED STATES MAGISTRATE JUDGE

10

## **ATTACHMENT A-2**

### PROPERTY TO BE SEARCHED

The property to be searched in connection with an investigation of violation of Title 21, United States Code, Sections 952, 960, and 963 is an Azumi GSM850, model L2Z cellular phone, IMEI: 355985073457298 ("Target Device Number 2").



Target Device 1 is currently in the possession of the Department of Homeland Security, Homeland Security Investigations as evidence and being held at 2255 Neils Bohr Court, San Diego, California 92154.

## ATTACHMENT B-2

Authorization to search Target Device 2 described in Attachment A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in Target Device 2 for evidence described below. The seizure and search of Target Device 2 shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats, and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of September 15, 2017 to December 4, 2017:

a.   tending to identify attempts to import cocaine, methamphetamine, or other federally controlled substances from Mexico into the United States;

b.   tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the importation of cocaine, methamphetamine, or other federally controlled substances from Mexico into the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in the importation of cocaine, methamphetamine, or other federally controlled substances from Mexico into the United States;

d.   tending to identify travel to or presence at locations involved in the importation of cocaine, methamphetamine, or other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.   tending to identify the user of, or persons with control over or access to, Target Device 2; and/or

f.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.